Edwin Rodriguez #05152-070
FCC Cumberland
PO Box 1000
Cumberland, Maryland 21501

In Propria Persona

Under Protest and
by Special Visitation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| United States of America [sic],<br>Plaintiff [sic],<br>v.<br>Edwin Rodriguez [sic],<br>Defendant [sic]. | Case No. 01-132-ML<br><br>NOTICE AND DEMAND TO DISMISS FOR LACK OF ANY CRIMINAL JURISDICTION WHATSOEVER: 28 U.S.C. § 1359; F.R.C.P. RULES 9(B), 12(B)(1), 12(B)(2), 12(H)(3). |

COMES NOW Edwin Rodriguez, Sui Juris, Citizen of Rhode Island State, expressly not a citizen of the United States ("federal citizen") and Defendant in the above entitled matter (hereinafter "Defendant"), to demand an immediate dismissal of the instant criminal case, with prejudice, for lack of any criminal jurisdiction to proceed in the first instance, either over the subject matter or over the person or property of the Defendant, and to provide formal notice to all interested parties of same. Defendant hereby incorporates by reference all authorities cited in Exhibit "A": Federal Criminal Jurisdiction, and in his MEMORANDUM OF LAW IN SUPPORT OF CHALLENGE TO CRIMINAL JURISDICTION OF THIS COURT. Rules 301, 302: Federal Rules of evidence, as if all were set forth fully herein.

KNOW ALL BY THESE PRESENTS:
(preamble to numbered paragraphs)

I, Edwin Rodriguez, Sui Juris, Defendant in the above entitled matter, hereby demand that this territorial (legislative) tribunal dismiss the instant criminal case with prejudice because it lacks exclusive jurisdiction over the exact geographical location where the alleged criminal activity mentioned in the so-called indictment is alleged to have taken place. Defendant was not arrested in any fort, magazine, arsenal, dockyard, "needful building", or other federal enclave within Rhode Island state, nor was my person or my private property situated within any of the aforementioned federal areas (a/k/a the federal zone).

A very recent U.S. Supreme Court decision, dated April 26, 1995, addressed the issue of exclusive legislative jurisdiction of the Congress, and the powers of the federal government. Justice Thomas, in a concurring majority opinion in U.S. v. Lopez, 115 S.CT. 1624 (1995), 131 L.ED.2d 626, very clearly says:

> "Indeed, on this crucial point, the majority and Justice Breyer [dissenting] agree in principle: the Federal Government has nothing approaching a police power." Id. at page 64. [emphasis added]

Justice Thomas went on to discuss "a regulation of police" at page 86, wherein he stated as follows:

> "U.S. v. DeWitt, 76 US 41, 9 Wall. 41, 19 L.ED 593 (1870) marked the first time the court struck down a federal law as exceeding the power conveyed by the commerce clause. In a 2 page opinion, the court invalidated a nationwide law prohibiting all sales of naptha, and illuminating oils. In so doing, the court remarked that the commerce clause "has always been understood as limited by its terms; and as a virtual denial of any power to interfere with the internal trade and business of the separate states." Id. at page 44.

The law in question was "plainly a regulation of police", which could have constitutional application only where Congress had exclusive authority, such as the territories. Id. pp. 44-45.

Earlier in the text, Justice Thomas, Id. at page 85, said, "Even before Gibbons, Chief Justice Marshall, writing for the Court in Cohens v. Virginia, 19 US 264, 6 Wheat 264, 5 L.ED 257 (1821), noted that Congress had no general right to punish murder committed within any of the states," and that Congress could not punish felonies generally. However, Congress could enact laws for places where it enjoyed plenary powers, for instance, over the District of Columbia, and whatever effect ordinary murders, robberies, or gun possession might have on interstate commerce was irrelevant to the question of Congressional power.

The first Federal Criminal Act did not establish a nationwide prohibition against murder and the like. See Act of April 30, 1790, Chapter 9 [1 State. 112]; rather, only when committed in United States (federal government) territories and possessions, or on the high seas. With the single exceptions of treason and counterfeiting, and notwithstanding any of the effects which murder, robbery or gun possession might have on interstate commerce, Congress understood that it could not establish nationwide prohibitions. Period.

Justice Thomas summed up his opinion dramatically with the statement quoted in part herein:

> "If we wish to be true to a Constitution that does not cede a police power to the Federal Government...

(1) "All federal crimes are statutory." Doble, "Venue and Criminal Cases in the United States District Court,"

Virginia Law Review, 287, 289 (1926), quoting:

"... [O]n the other hand, since all Federal Crimes are statutory and all criminal prosecutions in the federal courts are based on Acts of Congress," Rule 26, Federal Rules of Criminal Procedure, Taking of Testimony, Advisory Committee Notes, 1944 Adoption, paragraph 2 [emphasis added].

(2) Rule 54, Federal Rules of Criminal Procedure, paragraph (c), Application of Terms, to wit: "Act of Congress" includes any act of Congress locally applicable to and in force in the District of Columbia, in Puerto Rico, in a territory or in an insular possession. [emphasis added].

(3) There is no presumption in favor of jurisdiction, and the basis for jurisdiction must be affirmatively shown. Hanford v. Davis, 16 S.CT/ 1051, 163 US 273, 41 L.ED 157 (1896).

(4) See exact wording of Article I, Section 8, Clause 17, in the Constitution for the United States of America, which grant of authority does not extend over every square inch of the 48 contiguous Union states or over the 50 Union states.

(5) In principle, the exclusive legislative jurisdiction of the United States (federal government) is not addressed to subject matter, but to specific geographical locations. See U.S. v. Bevans, 16 US (3 Wheat) 336 (1818).

(6) It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor. U.S. v. Benson, 495 F.2d 475 at 481 (1974). A jurisdictional defect can never be waived by the Defendant, nor acquiesced by the Defendant, in the absence of a positive showing upon the record that jurisdiction was clearly and unambiguously established. It takes an Act of Congress!

(7) Without proof of the requisite ownership or possession by the United States, the crime has not been made out. U.S. v. Watson, 80 F.Supp. 649 (1948, E.D. VA.).

Only in America can we be forced into the status of "subjects" of a foreign corporation, by fiat legislation and the stroke of a CEO's pen, at the point of a gun, and thereby be immediately divested of standing in judicio, and declared to be debtors and enemies of our OWN Government. See 12 U.S.C. § 95(a) and (b).

(8) In criminal prosecutions, where the United States (federal government) is a proper moving party, it must not only establish ownership of the property upon which the crime was allegedly committed, but it must also produce documentation that Rhode Island state has ceded to it jurisdiction over that property. In the case of Fort Leavenworth Railway Co. v. Iowa, 114 US 525 at 531 (1885), the U.S. Supreme Court held as follows:

> "Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor."

(9) No jurisdiction exists for the United States (federal government) to enforce federal criminal laws, until consent to accept jurisdiction over acquired lands has been published and filed in behalf of the United States, as provided in 40 U.S.C. § 3112 (previously 255). The fact that a state may have authorized the United States to exercise jurisdiction is immaterial. See Adams v. United States, 319 US 312, 63 S.CT. 1122, 87 L.ED. 1421 (1943).

(10) All courts of justice are duty-bound to take judicial notice of the territorial extent of jurisdiction, although those acts are not formally put into evidence, nor in accord with pleadings. Jones v. U.S., 137 US 202, 11 S.CT. 80 (1890).

(11) Where a federal court is without jurisdiction over the offense, a judgment of conviction by the court and/or by the jury is void ab initio, on its face. Bauman v. U.S., 156 F.2d 534 (5th Cir. 1946). [emphasis added]

(12) Federal criminal jurisdiction is never presumed; it must always be proven; and it can never be waived. See U.S. v. Rogers, 23 Fed. 658 (USDC, WD Ark., 1885).

(13) The federal courts are limited both by the Constitution and by Acts of Congress. Owen Equip. & Erection Co. v. Kroger, 98 S.CT. 2396, 437 US 365, 57 L.ED.2d 274 (1978).

(14) The jurisdiction of federal courts is defined in the Constitution at Article III for judicial courts; in Article I for legislative courts; and in Article IV for territorial courts. Some courts created by Acts of Congress have been referred to as "Constitutional Courts", whereas others are regarded as "Legislative Tribunals." O'Donoghue v. U.S., 289 US 516 (1933), 77 L.ED 1356, 53 S.CT. 74; Mookini v. U.S., 303 US 201 at 205 (1938), 82 L.ED 748, 58 S.CT. 543.

(15) Legislative court judges do not enjoy Article III guarantees; "inherently judicial" tasks must be performed by judges deriving power under Article III. See U.S. v. Sanders, 641 F.2d 659 (1981), cert. den. 101 S.CT. 3055, 452 U.S. 918, 69 L.ED 422.

(16) Creation and composition of the United States District Court ("USDC") were accomplished by Acts of Congress on June 25, 1948 [62 Stat. 895], and November 13, 1963 [77 Stat. 331], currently codified at 28 U.S.C. § 132; and the jurisdiction 28, lists civil, admiralty, maritime, patent, bankruptcy, etc., and does not once list, mention, or describe any criminal jurisdiction.

(17) Acts of Congress creating the United States District Courts ("USDC") do not vest said territorial tribunals with any criminal jurisdiction whatsoever; these courts have only such jurisdiction as is conferred upon then by Acts of Congress under the Constitution. See Hubbard v. Ammerman, 465 F.2d 1169 (5th Cir. 1972),

cert. den. 93 S.CT. 967, 410 US 910, 35 L.ED.2d 272.

(18) The United States District Court ("USDC") is not a court of general jurisdiction, and has no other power bestowed upon it, except as prescribed by Congress. See Graves v. Snead, 541 F.2d 159 (6th Cir. 1976), cert. den. 97 S.CT. 1106, 429 US 1093, 51 L.ED.2d 539. Inclusio unius est exclusio alterius.

(19) It is apparent that the United States District Court for the Judicial District of Rhode Island was created and established under 28 U.S.C. § 132, and its jurisdiction is defined and limited by Chapter 85 of Title 28, United States Code. the Historical and Statutory Notes under 28 U.S.C. § 132 contain the following important qualification in the section entitled "Continuation of Organization of Court", to wit:

> "Section 2(b) of Act June 25, 1948, provided in part that the provisions of this title as set out in section 1 of said Act June 25, 1948, with respect to the organization of the court, shall be construed as a continuation of existing law. [emphasis added]."

(20) The courts of appropriate jurisdiction for violations of Title 18 U.S.C. are designated at Section 3231, specifically naming them as "district courts of the united states" [sic].

(21) There is a distinct and definite difference between a "United States District Court" ("USDC") and a "District Court of the United States" ("DCUS"). The words "District Court of the United States" commonly describe constitutional courts created under Article III of the Constitution, not the legislative courts which have long been the courts of the Territories. See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 US 237 at 241 (1952), 72 S.CT. 235, 96 L.ED 275, 13 Alaska 536.

(22) The term "District Court of the United States" commonly describes Article III courts, or "courts of the United States", and not legislative courts of the

territories. See American Insurance Co. v. 356 Bales of Cotton, 1 Pet. 511 (1828), 7 L.ED 242; International Longshoremen's and Warehousemen's Union v. Wirtz, 170 F.2d 183 (9th Cir. 1948), cert den. 336 US 919, 93 L.ED. 1082, 69 S.CT. 641, reh. den. 336 US 971, 69 S.CT. 936.

(23) Though the judicial system set up in a territory of the United States is a part of federal jurisdiction, the phrase "court of the United States", when used in a federal statute, is generally construed as not referring to "territorial courts". See Balzac v. Puerto Rico, 258 US 298 at 312 (1921), 42 S.CT. 343, 66 L.ED 627. In Balzac, the High Court stated:

> "The United States District Court is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under Article IV, Section 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court. [emphasis added]. "

(24) The distinction within the dual nature of the federal court system is also noted in Title 18 U.S.C. § 3241, which states that the United States District Court for the Canal Zone shall have jurisdiction "... concurrently with the district courts of the United States, of offenses against the laws of the United States committed upon the high seas." [emphasis added]

(25) This distinction between "district courts of the United Satates" and "United States District Courts" is readily apparent in the Section of Title 18 dealing with civil remedies for activities prohibited by 18 U.S.C. § 1962 (i.e. racketeering). Subsection(a) of 18 U.S.C. § 1964 makes explicit reference to the Article III "district courts of the United States", as follows:

> "(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders... " [emphasis added]

Subsection(c) of 18 U.S.C. § 1964 makes explicit reference to the Article IV "United States District Court", as follows:

> "(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court... " [emphasis added]

The language of these two subsections is almost identical in scope, with the important difference resulting from an apparent need to legislate separate and distinct court authorities for the Article III and for the Article IV forums, respectively. Inclusio unius est exclusio alterius. See also 28 U.S.C. § 1441 et seq., in which Congress appears to have confused the USDC with the DCUS throughout the removal statutes codified therein.

(27) Besides the Lopez decision, at least two other courts, i.e. United States District Courts, have come to the same or similar conclusions. See U.S.A. v. Wilson, Stambaughr, Skott, Ketchum, Braun, and Ballin, USDC Wisconsin, Case Number 94-CR-140 (March 16, 1995); and U.S. v. Kearns, USDC Texas, Case Number SA-95-CR-201 (October 6, 1995).

(28) Interestingly enough, in a bankruptcy case in the U.S. Bankruptcy Court, Middle District of Pennsylvania (Chapter 13), Case NO. 5-94-00839, titled In re: Francis Patrick Farrell v. IRS/BATF, the alleged debtor sued out a compulsory counterclaim against the IRS.BATF after the alleged creditor submitted its proof of claim. The counterclaim showed an extent of corruption unparalleled in American history, to which agencies of the federal government will often resort, specifically by placing a fraudulent "T-Code" on Individual Master file ("IMF") records.

(29) In this way, the IRS/BATF use Admiralty and Maritime forfeiture laws to deprive a state Citizen of property and assets, and to mis-classify him as a "high level narcotics trafficker." This occurred on November 17, 1995!

Why? See U.S. v. Good, 114 S.CT. 492 at 502, footnote 2 (1993). A similar mis-classification -- "Illegal Tax Protestor" -- is likewise an oxymoron for violating the First Amendment (protest has never been illegal in America) and for forcing a construction that reveals an "illegal tax", for all the world to see!

## SUMMARY

The United States District Courts ("USDC") have no criminal jurisdiction whatsoever to prosecute a state citizen within one of the 50 states of the Union which comprises the United States of America ("USA"), until and unless Congress says so.

Until and unless the United States (federal government) can prove ownership over said geographical land mass, particularly that parcel of land which is 199 Byfield Street, Providence, Rhode Island 02905, the USDC have no criminal jurisdiction whatsoever within any of the 50 union states.

Not a single Act of Congress vests the USDC, as distinct from the DCUS, with anything but "civil" authority. There is absolutely no criminal jurisdiction vested in said territorial tribunals, authorized by Article IV in the U.S. Constitution.

Recent research has also proven that the federal judiciary has sabotaged the U.S. Constitution and corrupted laws coverning the conduct of the federal courts. This has been done in part by creating the false impression that the United States District Court ("USDC") has territorial and subject matter jurisdiction within the several states of the Union, particularly over criminal prosecutions, when it does not.

The truth is that the USDC is designed to adjudicate matters that arise within

the federal zone, and the district Court of the United States ("DCUS") is designed to adjudicate matters that arise within the state zone. See U.S. v. Lopez supra.

On the face of the alleged indictment served upon Defendant, the USDC is named. This is a fraud upon Defendant, and upon all American People, who enjoy the fundamental guarantee of due process of law. Sedition by syntax is not due process of law.

## REMEDY DEMANDED

Therefore, Defendant hereby demands that this Article IV legislative tribunal establish exclusive, original jurisdiction by producing certified documents consisting of the following:

(a) Documentation showing "United States" (federal government) ownership of each and every geographical location mentioned in the instant indictment, wherein the alleged criminal activity took place;

(b) Documentation from the Rhode Island legislature which provides evidence of a cession by Rhode Island state, surrendering jurisdiction to the "United States" (federal government) over the geographical location as stated in (a) above;

(c) Documentation pursuant to Title 40 U.S.C. § 3112 (previously 255), wherein the "United States" (federal government) accepted jurisdiction to the geographical location as stated in (a) above, or, documentation showing concurrent jurisdiction with Rhode Island state over the geographical location as stated in (a) above;

Alternatively, absent the requisite documentation, Defendant hereby demands that this USDC dismiss the instant case with prejudice and in the interests of justice, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

"Shall" as used therein is mandatory. Confer in Black's Law Dictionary.

Respectfully Submitted,

Edwin Rodriguez, Sui Juris — 2.11.08 Date
Register No. 05152-070
FCC Cumberland
PO Box 1000
Cumberland, Maryland 21501

**EXHIBIT "A"**

Federal Criminal Jurisdiction

It is a well established principle of law that "all federal legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears"; see Caha v. United States, 152 US 211, 215, 14 S.CT. 513 (1894); American Banana Company v. United Fruit Company, 213 US 347, 357, 29 S.CT. 511 (1909); United States v. Bowman, 260 US 94, 97, 98, 43 S.CT. 39 (1922); Blackmer v. United States, 284 US 421, 437, 52 S.CT. 252 (1932); Foley Bros v. Filardo, 336 US 281, 285, 69 S.CT. 575 (1949); United States v. Spelar, 338 US 217,222, 70 S.CT. 10 (1949); and United States v. First National City Bank, 321 F.2d 14, 23 (2nd Cir. 1963). And this principle of law is expressed in a number of cases from the federal appellate courts; see McKeel v. Islamic Republic of Iran, 722 F.2d 582, 589 (9th Cir. 1983) (holding the Foreign Sovereign Immunities Act as territorial); Meredith v. United States, 330 F.2d 9, 11 (9th Cir. 1964) (holding federal wiretap laws as territorial); Store v. Devoy, 588 F.2d 336, 341 (2nd Cir. 1978); Clearly v. United States Lines, Inc., 728 F.2d 607, 609 (3rd Cir. 1984) (holding federal age discrimination laws as territorial); Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir. 1984) (holding same as Clearly, supra); United States v. Mitchell, 553 F.2d 996, 1002 (5th Cir. 1977) (holding marine mammals protection act as territorial); Pfeiffer v. William Wrigley, Jr., Co., 755 F.2d 554, 557 (7th Cir. 1985) (holding age discrimination laws at territorial); Airline Stewards & Sterwardesses Assn. v. Northwest Airlines, Inc., 267 F.2d 170, 175 (8th Cir. 1959) (holding Railway Labor Act as territorial); Zahourek v. Arthur Young and Co., 750 F.2d 827, 829 (10th Cir. 1984) (holding age discrimination laws as territorial); Commodities Futures Trading Comm. v. Nahas, 738 F.2d 487, 493 (D.C. Cir. 1984) (holding commission's subpoena power under federal law as territorial); Reyes v. Secretary of H.E.W., 476 F.2d 910, 915 (D.C. Cir. 1973) (holding administration of Social Security Act as territorial); and Schoenbaum v. Firstbrook, 268 F.Supp 385, 392 (S.D.N.Y. 1967) (holding securities act as territorial). But, because of statutory language, certain federal drug laws operate extra-territorially; see United States v. King, 552 F.2d 833, 851 (9th Cir. 1976). The United States has territorial jurisdiction only in Washington, D.C. the federal enclaves within the States, and in the territories and insular possessions of the "United States". However, it has no territorial jurisdiction over non-federally owned areas inside the territorial jurisdiction of the States within the American Union. And this proposition of law is supported by literally hundreds of cases.

As a general rule, the power of the United States criminally to prosecute is, for the most part, confined to offenses committed within "its jurisdiction". This is born out simply by examination of Title 18, U.S.C. Section 5 which defines the term "United States" in clear jurisdictional terms. Section 7 contains the fullest statutory definition of the "jurisdiction of the United States" [sic]. The United States District courts have jurisdiction of offenses occurring within the "United States", pursuant to Title 18 U.S.C. § Section 3231.

Examples of this proposition are numerous. In Pothier v. Rodman, 291 F.311 (1st Cir. 1923), the question involved whether a murder committed at Camp Lewis

Military Reservation in the State of Washington was a federal crime. Here, the murder was committed more than a year before the U.S. acquired a deed for the property in question. Pothier was arrested and incarcerated in Rhode Island and filed a Habeas Corpus petition seeking his release on the grounds that the federal courts had no jurisdiction over an offense not committed in U.S. jurisdiction. The First Circuit agreed that there was no federal jurisdiction and ordered his release. But, on appeal to the U.S. Supreme Court, in Rodman v. Pothier, 264 US 399, 44 S.CT. 360 (1924), that Court reversed; although agreeing with the jurisdictional principles enunciated by the First Circuit, it held that only the federal court in Washington State could hear that issue. In United States v. Unzeuta, 35 F.2d 750 (8th Cir. 1929), the Eighth Circuit held that the U.S. had no jurisdiction over a murder committed in a railroad car at Fort Robinson, the state cession statute being construed as not including railroad rights-of-way. This decision was reversed in United States v. Unzeuta, 281 U.S. 138, 50 S.CT. 284 (1930), the court holding that the U.S. did have jurisdiction over the railroad rights-of-way in Fort Robinson. In Bowen v. Johnson, 97 F.2d 860 (9th Cir. 1938), the question presented was whether jurisdiction over an offense prosecuted in federal court could be raised in a petition for Habeas Corpus. The denial of Bowen's petition was reversed in Bowen v. Johnson, 306 US 19, 59 S.CT. 442 (1939), the court concluding that such a jurisdictional challenge could be raised in a Habeas Corpus petition. But, the Court then addressed the issue, and found that the U.S. both owned the property in question and had a state legislative grant ceding jurisdiction to the United States, thus there was jurisdiction in the United States to prosecute Bowen. But, if jurisdiction is not vested in the United States pursuant to statute, there is no jurisdiction; see Adams v. United States, 319 US 312, 63 S.CT. 1122 (1943).

And the lower federal courts also require the presence of federal jurisdiction in criminal prosecutions. In Kelly v. United States, 27 F. 616 (D.Me. 1885), federal jurisdiction of a manslaughter committed at Fort Popham was upheld when it was shown that the U.S. owned the property where the offense occurred and the state had ceded jurisdiction. In United States v. Andem, 158 F. 996 (D.N.J. 1908), federal jurisdiction for a forgery offense was upheld on a showing that the United States owned the property where the offense was committed and the state had ceded jurisdiction of the property to the U.S. In United States v. Penn, 48 F. 669 (E.D.VA 1880), since the U.S. did not have jurisdiciton over Arlington National Cemetery, a federal larceny prosecution was dismissed. In United States v. Lovely, 319 F.2d 673 (4th Cir. 1963), federal jurisdiction was found to exist by U.S. ownership of the property and a state cession of jurisdiction. In United States v. Watson, 80 F.Supp. 649 (E.D.VA. 1948), federal criminal charges were dismissed, the court stating as follows:

"Without proof of the requisite ownership or possession of the United States, the crime has not been made out." 80 F.Supp at 651

In Brown v. United States, 257 F.46 (5th Cir. 1919), federal jurisdiction was upheld on the basis that the U.S. owned the post office site where a murder was committed and the state had ceded jurisdiction; see also England v. United States, 174 F.2d 466 (5th Cir. 1949); Krull v. United States, 240 F.2d 122 (5th Cir. 1957); Hudspeth v. United States, 223 F.2d 731 (5th Cir. 1963). In United States v. Townsend, 474 F.2d 209 (5th Cir. 1973), a conviction for receiving stolen property was reversed when the court reviewed the record and learned that there was absolutely no evidence disclosing that the defendant had committed this offense within the jurisdiction of the United States. And in United States v. Benson,

495 F.2d 475 (5th Cir. 1974), in finding federal jurisdiction for a robbery committed at Fort Rucker, the court stated:

> "It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor." 495 F.2d at 481

In two Sixth Circuit cases, United States v. Tucker, 122 F.518 (W.D.KY 1903), a case involving an assault committed at a federal dam, and United States v. Blunt, 558 F.2d 1245 (6th Cir. 1977), a case involving an assault within a federal penitentiary, jurisdiction was sustained by finding that the U.S. owned the property in question and the state involved had ceded jurisdiction. In In re Kelly, 71 F. 545 (E.D. Wis 1895), a federal assault charge was dismissed when the court held that the state cession statute in question was not adequate to convey jurisdiction of the property in question to the United States. In United States v. Johnson, 426 F.2d 1112 (7th Cir 1970), a case involving a federal burglary prosecution, federal jurisdiction was sustained upon the showing of U.S. ownership and cession. And cases from the Eighth and Tenth Circuits likewise require the same elements to be shown to demonstrate the presence of federal jurisdiction; see United States v. Heard, 270 F.Supp 198 (W.D.MO 1967); United States v. Redstone, 488 F.2d 300 (8th Cir. 1973); United States v. Goings, 504 F.2d 809 (8th Cir. 1974) (demonstrating loss of jurisdiction; Hayes v. United States, 367 F.2d 216 (10th Cir. 1966); United States v. Carter, 430 F.2d 1278 (10th Cir. 1970); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); and United States v. Cassidy, 571 F.2d 534 (10th Cir. 1978).

Of all the circuits, the Ninth Circuit has addressed jurisdictional issues more than any of the rest. In United States v. Bateman, 34 F.86 (N.D.CAL 1888), it was determined that the United States did not have jurisdiction to prosecute for a murder committed at the Presidio because California had never ceded jurisdiction; see also United States v. Tully, 140 F. 899 (D.MON 1905). But later, California ceded jurisdiction for the Presidio to the United States, and it was held in United States v. Watkins, 22 F.2d 437 (N.D.CAL 1927), that this enabled the U.S. to maintain a murder prosecution; see also United States v. Holt, 168 F.141 (W.D. WASH 1909), United States v. Lewis, 253 F.469 (S.D. CAL 1918), and United States v. Wurtzbarger, 276 F. 753 (D.OR 1921). Because the U.S. owned, and had a state cession of jurisdiction for, Fort Douglas in Utah, it was held that the U.S. had jurisdiction for a rape prosecution on Rogers v. Squier, 157 F.2d 948 (9th Cir. 1946). But without a cession, the U.S. has no jurisdiction. see Arizona v. Manypenny, 455 F.Supp 1123 (D.ARIZ 1977).

The above cases from the U.S. Supreme Court and federal appellate courts set forth the rule that in criminal prosecutions, the government, as the party seeking to establish the existence of federal jurisdiction, must prove U.S. ownership of the property in question and a state cession of jurisdiction. This same rule manifests itself in state cases. State courts are courts of general jurisdiction, and in a state criminal prosecution, the state must only prove that the offense was committed within the state and a county thereof. If a defendant contends that only the federal government has jurisdiction over the offense, he, as proponent for the existence of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and state cession of jurisdiciton.

Examples of the operation of this principle are numerous. In Arizona, the state has jurisdiction over federal lands in the public domain, the state not having ceded jurisdiction of that property to the U.S.; see State v. Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977). In California, if it is not proved by a defendant in

a state prosecution that the state has ceded jurisdiction, it is presumed the state does have jurisdiction over a criminal offense; see People v. Brown, 69 Cal. App.2d 602, 159 P.2d 686 (1945). If the cession exists, the state has no jurisdiction; see People v. Mouse, 203 Cal. 782, 265 P.944 (1928). In Montana, the state has jurisdiction over property if it is not proved there is a state cession of jurisdiction to the U.S.; see State ex rel Parker v. District Court, 147 Mon. 151, 410 P.2d 459 (1966); the existence of a state cession of jurisdiction to the U.S. ousts the state of jurisdiction; see State v. Tully, 31 Mont. 365, 78 P. 760 (1904). The same applies in Nevada; see State v. Mack, 23 Nev. 359, 47 P. 763 (1897), and Pendelton v. State, 734 P.2d 693 (Nev. 1987); it applies in Oregon (see State v. Chin Ping, 91 OR 593, 176 P.188 (1918) and State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987)); and in Washington (see State v. Williams, 23 Wash.App. 694, 598 P.2d 731 (1979)).

In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary of an IRS office was held to be within state jurisdiction, the court holding that the defendant was required to prove existence of federal jurisdiction by U.S. ownership of the property and state cession of jurisdiction. In two cases from Michigan, larcenies committed at U.S. Post Offices which were rented were held to be within state jurisdiction; see People v. Burke, 161 Mich. 397, 126 N.W. 466 (1910) and People v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936); see also In re Kelly, 311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.2d 630 (MO. App. 1968), state jurisdiction over a theft offense occurring in a federal building was upheld, and the court stated that a defendant had to show federal jurisdiction by proving U.S. ownership of the building and a cession of jurisdiction from the state to the United States. A similar holding was made for a theft at a U.S. missile site in State v. Rindall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendleton v. State, 734 P.2d 693 (Nev. 1987), the state court was held to have jurisdiction over a DUI (driving under the influence) committed on federal lands, the defendant having failed to show U.S. ownership and state cession of jurisdiction.

In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary of an IRS office was held to be within state jurisdiction, the court holding that the defendant was required to prove existence of federal jurisdiction by U.S. ownership of the property and state cession of jurisdiction. In two cases from Michigan, larcenies committed at U.S. Post Offices which were rented were held to be within state jurisdiction; see People v. Burke, 161 Mich. 397, 126 N.W. 446 (1910) and People v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936); see also In re Kelly, 311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.2d 630 (MO. App. 1968), state jurisdiction over a theft offense occurring in a federal building was upheld, and the court stated that a defendant had to show federal jurisdiction by proving U.S. ownership of the building and a cession of jurisdiction from the state to the United States. A similar holding was made for a theft at a U.S. missile site in State v. Rindall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendleton v. State, 734 P.2d 693 (Nev. 1987), the state court was held to have jurisdiction over a DUI (driving united the influence) committed on federal lands, the defendant having failed to show U.S. ownership and state cession of jurisdiction.

In People v. Gerald, 40 Misc.2d 819, 243 N.Y.S.2d 1001 (1963), the state was held to have jurisdiction of an assault at a U.S. Post Office since the defendant did not meet his burden of showing presence of federal jurisdiction; and because a defendant failed to prove title and jurisdiction in the United States for an offense committed at a customs station, state jurisdiction was upheld in People v. Williams, 136 Misc.2d 294, 518 N.Y.S.2d 751 (1987). This rule was likewise

enunciated in State v. Burger, 33 Ohio App.3d 231, 515 N.E.2d 640 (1986), in a case involving a DUI offense committed on a road near a federal arsenal.

In Kuerschner v. State, 493 P.2d 1402 (Okl.Cr.App. 1972), the state was held to have jurisdiction of a drug sales offense occurring at an Air Force Base, the defendant not having attempted to prove federal jurisdiction by showing title and jurisdiction of the property in question in the United States; see also Towry v. State, 540 P.2d 597 (Okl.Cr.App. 1975). Similar holdings for murders committed at U.S. Post Offices were made in State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918), and in United States v. Pate, 393 F.2d 44 (7th Cir. 1968). Another Oregon case, State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987), demonstrates this rule. And finally, in Curry v. State, 111 Tex. Cr. 264, 12 S.W.2d 796 (1928), it was held that, in the absence of proof that the state had ceded jurisdiction of a place to the United States, the state courts had jurisdiction over an offense.

Therefore, in federal criminal prosecutions, the government must prove the existence of federal jurisdiction by showing U.S. ownership of the place where the crime was committed and state cession of jurisdiction. If the government contends for the power criminally to prosecute for an offense occurring outside "its jurisdiction", it must prove an extra-territorial application of the statute in question as well as a constitutional foundation supporting the same. Absent this showing, no federal prosecution can be commenced for offenses committed outside "its jurisdiction", i.e. the federal zone.

# CERTIFICATE OF SERVICE

I, Edwin Rodriguez, Sui Juris, hereby certify, under penalty of perjury, under the laws of the United States of America, without the "United States", that I am at least 18 years of age, a citizen of one of the United States of America, and that on this 11 day of February, 2008, I personally served the following document(s):

NOTICE AND DEMAND TO DISMISS FOR
LACK OF ANY CRIMINAL JURISDICTION WHATSOEVER:
28 U.S.C. § 1359; F.R.C.P. Rules 9(b), 12(b)(1),
12(b)(2), 12(h)(3)

by placing one true and correct copy of said document(s) in First-Class United States Mail, with postage prepaid, and properly addressed to the following:

Adi Goldstein
50 Kennedy Plaza
Providence, Rhode Island 02903

Edwin Rodriguez

AFFIDAVIT OF EDWIN RODRIGUEZ

I, Edwin Rodriguez, being first duly sworn deposes and says the following:

1) The United States did not establish that it had exclusive or concurrent jurisdiction over the parcel of land located at 199 Byfield Street, Providence, Rhode Island 02905, where the offense occurred.

2) On December 7, 2007, The Environmental and Natural Resources Division (E.N.R.D.) informed Mr. Rodriguez that pursuant to the Freedom of Information Act, no documents could be located in reference to Title 40 U.S.C. § 3112 regarding ceding and accepting jurisdiction (see Appendix 1).

3) On December 11, 2007, The Office of the Attorney General Patrick C. Lynch for the State of Rhode Island, informed Mr. Rodriguez that a search for documents in reference to Title 40 U.S.C. § 3112 regarding the ceding and acceptance of jurisdiction between the State of Rhode Island and United States (federal government) could not be located (see Appendix 2).

4) The record in the United States District Court for the District of Rhode Island did not satisfy and/or establish any specific method of jurisdiction over land located at 199 Byfield Street, Providence, Rhode Island 02905, as Congress required in Title 40 U.S.C. § 3112 previously 255) and as the Supreme Court set forth in Adams v. United States, 319 U.S. 312, 314, 63 S.CT. 1122, 87 L.ED. 1421 (1943)

FURTHER, Affiant saith not, I, Edwin Rodriguez declare under the penalty of perjury that this affidavit is both true and correct.

Edwin Rodriguez [signature] 1-30-2008
Edwin Rodriguez, Affiant Date

NAME [signature] TITLE CASE MGR.
**AUTHORIZED BY THE ACT OF JULY 7, 1955 TO ADMINISTER OATHS (18 USC 4004).**